# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| KENYA L. KELLY,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>　　　　　Defendant. | 2:15-cv-02169-RJC-GWF<br><br>**ORDER** |

This case arises out of an insurer's alleged breach of an uninsured motorist policy contract following an automobile accident. Pending before the Court is Defendant State Farm's unopposed Motion for Partial Summary Judgment. (ECF No. 20.) For the reasons given herein, the Courts grants the Motion.

## I.   FACTS AND PROCEDURAL HISTORY

On July 7, 2014, Plaintiff Kenya Kelly ("Kelly") was traveling as a passenger in a vehicle owned and operated by coworker and supervisor Faizah Elliot ("Elliot"). (Compl. ¶ 12–14, ECF No. 1 at 10; Mot. Summ. J. 5, ECF No. 20.) While stopped due to traffic congestion, Kelly and Elliot were rear-ended by an unidentified driver who immediately fled the scene in his or her car. (Compl. ¶ 15–16, ECF No. 1 at 11.)

At the time of the accident, Elliot had a State Farm automobile insurance policy that included uninsured motorist ("UIM") coverage in the amounts of $15,000 per person and

$30,000 per accident. (*Id.* at ¶ 5, ECF No. 1 at 10; Elliot Policy, ECF No. 20-1 at 5.) Kelly also had a State Farm automobile insurance policy, in the name of her husband Jermaine Kelly, that also included UIM coverage of $15,000 per person and $30,000 per accident. (Compl. ¶ 6, ECF No. 1 at 10; Kelly Policy, ECF No. 20-1 at 47.) Following the accident, on or about July 11, 2014, Kelly made a claim with State Farm—through her attorney—under the UIM provisions of both policies and demanded the policy limits. (Compl. ¶ 21, ECF No. 1 at 11; July 11 Claim Letter, ECF No. 20-1 at 88.) State Farm does not dispute that both policies were valid when Kelly submitted the claim. (Mot. Summ. J. 7–8, ECF No. 20.)

On July 16, 2014, State Farm responded to Kelly's counsel, acknowledging her claim, providing general coverage information, and requesting (1) written authorization to obtain medical bills and records, earnings and employment information, and any other information necessary to substantiate Kelly's claim; (2) a completed "injury questionnaire"; (3) a list of medical providers; and (4) itemized bills for accident-related treatment. (July 16 Claim Letter, ECF No. 20-1 at 90–91.) On October 15, 2014, having received no response from Kelly's counsel in three months, State Farm sent another letter requesting "any information you have obtained regarding your client's injuries and treatment." (October 15 Claim Letter, ECF No. 20-1 at 101.) Yet another month later, on November 17, 2014, State Farm sent a final information request to Kelly's counsel, referencing the policy contract and the requirement that Kelly provide State Farm with information necessary to process the claim. (November 17 Claim Letter, ECF No. 20-1 at 103.)

On November 26, 2014, Kelly's counsel replied to State Farm's requests, providing a signed Authorization for Release of Information and a list of health care providers. (Mot. Summ. J. 9, ECF No. 20.) On December 2, 2014, State Farm sent requests for medical records to the

three hospitals Kelly identified in her list of health care providers. (December 2 Claim Letters, ECF No. 20-1 at 110–12.)

The next correspondence between Kelly and State Farm was sent three months later on March 4, 2015, when Kelly's counsel provided—for the first time since State Farm's initial request on July 16, 2014—the itemized bills for Kelly's accident-related treatment, and asserted medical special damages of $19,512.02. (March 4 Claim Letter, ECF No. 20-1 at 114–15.) In the same letter, Kelly's counsel demanded payment of "the full amount of Ms. Kelly's uninsured motorist coverage and excess coverage available to her to settle her bodily injury claim," and imposed a response deadline of March 20, 2015. (*Id.*) State Farm complied with Kelly's deadline, and responded on March 20. (March 20 Claim Letter, ECF No. 20-1 at 117–18.) State Farm offered a payment of $3,500 to settle Kelly's claim. (*Id.*) State Farm also expressed "concerns regarding the treatments received and whether they are related to the motor vehicle accident or [Kelly's] pre-existing conditions." (*Id.*) Accordingly, State Farm requested five years of prior medical history for Kelly in order to determine whether "any pre-existing injuries or conditions would have either made her more susceptible to injury or aggravation or delayed her recovery . . . ." (*Id.*)

Kelly did not respond to State Farm's offer of $3,500, so State Farm reiterated the offer in another letter dated June 1, 2015. (Mot. Summ. J. 9, ECF No. 20.) On June 2, 2015, Kelly's counsel replied. (June 2 Claim Letter, ECF No. 20-1 at 122–23.) In this reply, Kelly's counsel requested (1) a written explanation of how State Farm determined the value of Kelly's claim; (2) the name of any doctor or health care provider consulted by State Farm in evaluating the claim; (3) identification of any specific pre-existing conditions in Kelly's records that are the basis for State Farm's concerns; and (4) specification of any information in Kelly's records forming basis for State Farm's request for five years of Kelly's medical history. (*Id.*) State Farm replied the

next day. (June 3 Claim Letter, ECF No. 20-1 at 125–26.) State Farm explained that it had applied an offset to Kelly's claim in the amount of $13,720.62, based on worker's compensation benefits Kelly received following the accident. State Farm further identified the UIM policy provisions that granted it the right to apply such offset. State Farm also responded to Kelly's additional questions, identifying Kelly's history of migraines and stroke as the cause for its concern, and reiterating its need for additional medical history to "fully and fairly evaluate" Kelly's claim.

On July 7, 2015, Kelly's counsel replied, expressing dissatisfaction with the information provided in State Farm's letter of June 3, challenging the propriety of the worker's compensation offset, and requesting additional detail regarding how State Farm determined the value of Kelly's claim. (July 7 Claim Letter, ECF No. 20-1 at 128–29.) Kelly's counsel also provided Kelly's prior medical records "as requested," and asserted that her accident-related injuries had nothing to do with any pre-existing conditions. This July 7 Claim Letter indicated that Kelly's medical special damages totaled $21,201.02. On July 16, 2015, State Farm replied, noting that Kelly had not provided any new information, and as a result, State Farm's settlement offer had not changed. (July 16 Claim Letter, ECF No. 20-1 at 131.) State Farm also noted that Kelly's claimed medical special damages had increased from $19,512.02 to $21,201.02 without any supporting documentation, and requested additional information to substantiate the increase.

Kelly's counsel never responded to State Farm's July 16 letter. Therefore, State Farm sent a follow-up letter on August 18, 2015, indicating it had not received additional information from Kelly, and including payment of $3,500.

On October 14, 2015, based on the foregoing, Kelly sued State Farm for breach of contract, Unfair Claims Practices under NRS 686A.310, contractual and tortious breach of the implied covenant of good faith and fair dealing, and bad faith. State Farm now moves the Court

for an order granting summary judgment in its favor with respect to: (1) Unfair Claims Practices (NRS 686A.310); (2) bad faith; (3) contractual breach of the implied covenant of good faith and fair dealing or, in the alternative, the availability of extra-contractual damages on this claim; (4) the availability of attorneys' fees on Kelly's extra-contractual claims; and (4) punitive damages.

## II.   SUMMARY JUDGMENT STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*,

398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the non-moving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

**III.    ANALYSIS**

Kelly has failed to oppose or otherwise respond to State Farm's Motion for Partial Summary Judgment, and has therefore presented no admissible evidence of any genuine dispute

of material fact. Kelly's failure to respond to the motion does not constitute a consent to the granting of the motion. *See* D. Nev. Local Rule 7-2(d). However, it does permit the Court to consider the facts presented by State Farm as undisputed for purposes of the motion. *See* Fed. R. Civ. P. 56(e)(2).

    **a. NRS 686A.310**

Pursuant to the Unfair Claims Practices Act, NRS § 686A.310, an insurer's action is considered an unfair practice if it engages in one or more of the following activities:

    (a) Misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue.

    (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

    (c) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

    (d) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

    (e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

    (f) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

    (g) Attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application.

    (h) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured, or the representative, agent or broker of the insured.

    (i) Failing, upon payment of a claim, to inform insureds or beneficiaries of the coverage under which payment is made.

    (j) Making known to insureds or claimants a practice of the insurer of appealing rom arbitration awards in favor of insureds or claimants for the purpose of

compelling them to accept settlements or compromises less than the amount awarded in arbitration.

(k) Delaying the investigation or payment of claims by requiring an insured or a claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

(l) Failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

(m) Failing to comply with the provisions of NRS 687B.310 to 687B.390, inclusive, or 687B.410.

(n) Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim.

(o) Advising an insured or claimant not to seek legal counsel.

(p) Misleading an insured or claimant concerning any applicable statute of limitations.

Nev. Rev. Stat. § 686A.310(1). "Unlike a cause of action for bad faith, the provisions of Nev. Rev. Stat. § 686A.310 'address the manner in which an insurer handles an insured's claim whether or not the claim is denied.'" *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010) (quoting *Schumacher v. State Farm Fire & Cas. Co.*, 467 F. Supp. 2d 1090, 1095 (D. Nev. 2006)).

In her Complaint, Kelly attempts to make a blanket assertion that State Farm violated the Unfair Claims Practices Act without indicating which provisions of the Act State Farm allegedly violated. Additionally, Kelly does not provide any facts in her Complaint that demonstrate a violation of one of the Act's provisions, nor has she offered any evidence of State Farm's unfair practices with respect to this motion.

/ / /

Furthermore, the evidence presented shows that State Farm was prompt to respond to every communication it received from Kelly. Indeed, State Farm was more diligent in processing the claim than Kelly's own counsel was in pursuing it, sending multiple follow-up communications when Kelly's counsel was unresponsive during prolonged periods of time. The only significant delay in processing the claim that could be attributed to State Farm was a space of about three months—from December 2, 2014, to March 4, 2015—immediately following State Farm's written requests to Kelly's health care providers for copies of medical and billing records. A three-month delay in processing an insurance claim is not an unreasonable delay that violates the Unfair Claims Practices Act. *See Williams v. Am. Family Mut. Ins. Co.*, 593 F. App'x 610, 612 (9th Cir. 2014); *Zurich*, 720 F. Supp. 2d at 1238. Moreover, the delay is further justified by the fact that State Farm had yet to receive important information that it originally requested from Kelly's counsel on July 16, 2014—namely, itemized bills for Kelly's accident-related treatment. It was on March 4, 2015, at the end of this three-month delay in processing, that Kelly's counsel finally provided the itemized bills. After receiving this information, State Farm once again promptly responded with its initial claim settlement offer of $3,500.

The evidence also demonstrates that State Farm acted reasonably in processing the claim. State Farm reviewed the information received from Kelly's counsel and health care providers and learned of a worker's compensation benefit payment in the amount of $13,720.62, which, according to State Farm's analysis, reflected Kelly's actual medical special damages. (*See* Hooker Decl. ¶ 15, ECF No. 20-3.) State Farm clearly communicated that it had applied this offset, and disclosed the exact provisions of the policy contract which entitled it to apply the offset, in a letter to Kelly's counsel. State Farm further calculated Kelly's pain and suffering to fall in the range of $3,500 to $7,000, and made an initial offer of $3,500 to settle the claim. Although Kelly may have been unsatisfied with State Farm's explanation of the analysis of her

claim, "[a]n insurer's analysis of an insured's claim in a letter denying coverage need not necessarily be framed in the manner that the insured would prefer." *Zurich*, 720 F. Supp. 2d at 1237. State Farm's characterizations of Kelly's claim in the letter explaining the bases for its $3,500 offer are not misrepresentations of the policy terms or of pertinent facts relating to coverage, but rather constitute State Farm's analysis of the policy and the facts pertinent to the claim.

Of course, the basis of this lawsuit is that Kelly believes $3,500 to be an unreasonable settlement. However, Kelly has presented no evidence to support her assertion that the payment of $3,500 to settle the claim was unreasonable in light of the circumstances. In fact, State Farm's final communications make clear that State Farm was willing to consider any additional information Kelly wished to submit in order to demonstrate that a greater amount should be paid. Kelly's counsel failed to provide additional information, and failed to respond to State Farm's letter of July 16, 2015, which reiterated State Farm's settlement offer. On August 18, 2016, having received no response from Kelly, State Farm paid $3,500 on the claim. Included with the payment was a letter stating: "This payment should be considered an advance without prejudicing your client's right to receive a higher amount in the future through continued negotiations." (August 18 Claim Letter, ECF No. 20-1 at 133–34.) Despite State Farm's payment of the claim and its continued willingness to negotiate and consider any additional information Kelly offered, Kelly halted communications with State Farm, and opted to file this lawsuit.

Kelly has presented no evidence of unfair claims practices, and the Court finds none. Accordingly, the Court will grant summary judgment for State Farm on Kelly's second cause of action for violations of NRS 686A.310.

### b. Bad Faith

> Where an insurer fails to deal fairly and in good faith with its insured by refusing without proper cause to compensate its insured for a loss covered by the policy

such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing. The duty violated arises not from the terms of the insurance contract but is a duty imposed by law, the violation of which is a tort.

*U. S. Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975). Where this implied covenant of good faith and fair dealing arises under the common law, and not the insurance contract, "[a] violation of the covenant gives rise to a bad-faith tort claim." *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009). Accordingly, in the insurance context, a claim for tortious breach of the implied covenant of good faith and fair dealing *is* a claim for bad faith. *See Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 863 F. Supp. 1237, 1242 (D. Nev. 1994); *Sherwin v. Infinity Auto Ins. Co.*, No. 2:11-CV-00043-APG, 2013 WL 5918312, at *3 (D. Nev. Oct. 31, 2013), *aff'd*, 639 F. App'x 466 (9th Cir. 2016). Therefore, Kelly's fourth and fifth causes of action are in reality a single claim, based on the single legal theory of insurance bad faith.

To prove a claim of insurance bad faith, the plaintiff must establish that the insurer denied the insured's claim, without any reasonable basis, and with "knowledge or awareness of the lack of any reasonable basis to deny coverage, or [with] reckless disregard as to the unreasonableness of the denial." *Schumacher*, 467 F. Supp. 2d at 1095; *see also Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (Nev. 1998), *opinion modified on denial of reh'g*, 979 P.2d 1286 (1999). No insurance bad faith claim lies where the insurer has a reasonable basis for challenging a claim. *See Miller*, 212 P.3d at 324. "Because the key to a bad faith claim is whether denial of a claim was reasonable, a bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was 'a genuine dispute as to coverage.'" *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003).

/ / /

State Farm has demonstrated a genuine dispute as to coverage. State Farm asserts it applied an offset based on the amount of worker's compensation benefits already received by Kelly, which benefits covered the full amount of Kelly's medical special damages. Accordingly, the $3,500 offer from State Farm covered only Kelly's estimated pain and suffering. Kelly has offered no evidence in response. Therefore, there is no evidence to support a finding that State Farm lacked a reasonable basis to deny coverage, or that State Farm knew it lacked a reasonable basis to deny coverage.

Accordingly, the Court will grant summary judgment for State Farm on Kelly's claim of insurance bad faith, which will dispose of both the fourth and fifth causes of action in Kelly's complaint.

### c. Breach of the Implied Covenant of Good Faith and Fair Dealing

A covenant of good faith and fair dealing is implied in every contract under Nevada law. *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922 (Nev. 1991). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Id.* at 923. "Reasonable expectations are to be determined by the various factors and special circumstances that shape these expectations." *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (citation omitted). A breach of the covenant occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of the contract . . . ." *Hilton*, 808 P.2d at 923. Therefore, only a party to a valid contract can be liable for a breach of the implied covenant. *See id.*

It is undisputed that a valid contract existed between Kelly and State Farm. However, as shown above, Kelly has failed to present any evidence of delay, unreasonableness, or bad faith. There is no evidence that State Farm deliberately contravened the intention or spirit of the

contract. Indeed, State Farm directed Kelly to specific provisions of the policy contract that gave State Farm the right to apply the contested offset.

Accordingly, the Court will grant summary judgment in favor of State Farm on Kelly's third cause of action for breach of the implied covenant of good faith and fair dealing.

### d. Attorneys' Fees

Because the Court grants summary judgment for State Farm on Kelly's second, fourth, and fifth causes of action, it need not address State Farm's argument that Kelly is not entitled to attorneys' fees on her extra-contractual claims.

### e. Punitive Damages

The remaining issue in State Farm's motion is Kelly's claim for punitive damages. The prayer for punitive damages is not a separate cause of action. Rather, the Court must simply examine whether this measure of damages is available under Kelly's surviving claim for breach of contract. In Nevada, punitive damages may be awarded in an action "not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied...." Nev. Rev. Stat. § 42.005(1). An ordinary breach of contract claim will not support punitive damages under the statute. *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257, 263 (Nev.1997). Therefore, the Court grants summary judgment for State Farm with respect to punitive damages, finding as a matter of law that Kelly is not entitled to punitive damages on her only remaining claim of breach of contract.

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

IT IS HEREBY ORDERED that State Farm's Motion for Partial Summary Judgment (ECF No. 20) is GRANTED.

IT IS SO ORDERED.

_____
ROBERT C. JONES
United States District Judge

DATED: This 8th day of December, 2016.